Next case for argument this morning is Y.H. v. Blizzard Entertainment. I see both counsel are here in person, and Ms. Aulis at the lectern, ready to proceed. Please go ahead. Good morning, your honors. May it please the court, Ashley Aul for Appellant Blizzard Entertainment. We're here because the district court did not follow the correct framework when analyzing Blizzard's motion to compel arbitration, and if she had applied the correct framework, she would have had to grant the motion. I know the court has questions about Article III standing and the pleading. If you'll permit me, I'm going to start with arbitration issues, but I will, of course, address the court's question. The key error that the district court committed was not following the steps properly that are required when analyzing a motion to compel arbitration. The first step is to look to see if there is a contract that requires arbitration. There was here. It was the contract between Y.H.'s father, whom I'll call Mr. Harris, and Blizzard. Under California law, Mr. Harris was entitled to agree on behalf of his daughter to various provisions of that agreement. In this case, that agreement explicitly recognized that he could let a child use the platform, and if he did, that he was agreeing to the provisions on behalf of not just himself, but also the child. Under California law, I think there are at least two ways in which that binds her as a third-party beneficiary or under the special relationship test. Regardless, she's covered by that agreement, and so the district court should have concluded that there was an agreement to arbitrate. That gets to the second question, which is, is there a delegation clause? Again, the answer here is yes, there was a delegation clause. As a result, under the Supreme Court's precedent, any questions about whether or not this particular dispute fell within the scope of arbitration, whether or not the contract as a whole was valid, should have itself gone to the arbitrator. Instead of analyzing the questions in that order, the district court essentially skipped over them to a kind of enforceability question under disaffirmation, under California law. Our position is that doesn't apply at all because we're talking about a contract between Mr. Harris and Blizzard with respect to arbitration, but regardless, as the Sixth and Seventh Circuits have concluded, even that question if presented in a case where the individual minor was the contractor, that question still goes to an arbitrator if there is a delegation clause. In sum, because the district court did not follow that framework and did not follow the steps the Supreme Court requires in the right order, she reached the wrong conclusion, and we would ask the court to reverse. If the court has no questions about that, I can- Well, I do. I have some questions about the contract at issue. So there's an end-user license agreement that YH's father presumably clicked on a box and agreed to when he started his BattleNet account or something along those lines. I may not have the correct name for the account. And I read YH's brief and reply brief to be somewhat equivocal about the contract between YH and Blizzard. So there's an end-user license agreement with Mr. Harris and Blizzard, but it seems that YH is arguing that there are separate contracts, and those contracts are the purchases, that by making the purchases in the game, those are contractual relationships directly between YH and Blizzard, and there's no licensing agreement. There's no terms of service. It's just that offer acceptance-based contract. So can that be the basis of the contract at issue? And if so, then there's no arbitration agreement. So her claim may be structured exactly the way you articulated, which is to say it's about these individual transactions. It doesn't matter for purposes of the arbitration question. The reason it doesn't matter is because the EULA, which includes the arbitration provision, explicitly applies to all uses of the account. And so it may be, let's put this fact pattern aside, right? It may be that with any user, you have this EULA, and then of course you have all sorts of interactions with the platform. You could have interactions that are contractual or quasi-contractual or tortious or anything. Under the terms of the end-user license agreement, all of that is covered by the EULA, and so disputes about any of that go to arbitration. And so for purposes of just the question before the court here today, which is whether the motion to compel arbitration should have been granted, her specific theory of what was the contract that she wants to disaffirm doesn't actually change the conclusion. It should go to arbitration regardless. Maybe we can move to the Article III issue. I guess the first question I have there is, do you agree that YPH needs to have an injury in fact in order for us to resolve this issue over the arbitration clause? Yes. So with any case, of course, it's before the federal court. You need to have an injury in fact under Lujan and following precedents. And let me walk through our position here because the court's question, I read to be specific to whether she pleaded a sufficient injury in fact. And while I'm making admissions contrary to interest in some way, the reason we did not challenge the pleading on that basis is because, though it's always a bit of a close question, I think here she did. To be clear, she did not allege that she used her own money. If that's required, then I don't think she met that standard. But my reading of the case law about statutory rights, not just under federal law and state law, is of course that statutes can create rights, the invasion of which is an injury in fact.  The plaintiff pleaded a concrete, particularized invasion of that right. The key paragraph to me in her complaint is paragraph 38. Paragraph 38 is where she says that had defendant permitted plaintiff to disaffirm her purchases, she would have done so. And I think that could certainly be clearer. And in general, I would take the position that a plaintiff has to allege that there was an actual denial of an effort to disaffirm in order to bring a case like she's brought. But that's at least arguably the kind of general allegation that includes specific facts necessary to support it. And I think there is no way to make that allegation without the assumption that she was unable to disaffirm when she wanted to. And so that is the basis for our not having challenged the pleading as not supporting article three, as not supporting article three jurisdiction here. And as a result, what is the source of this then? Is it a statutory violation? That's does not then get us into this line of cases from the Supreme Court, like TransUnion about whether that in and of itself is sufficient to give her an injury in fact. So I think with respect to the answer is yes, it does. And the answer to me is under NRA Facebook. I think this case in Canada, this court has already analyzed this question with respect to the California unjust enrichment. I cited NRA Facebook in a 28-J letter. I think it's controlling on the question of unjust enrichment. The court has not analyzed whether this is the case with respect to a disaffirmation right. But at least our assumption was that she stated a claim for a violation of a substantive right that has some anchor in the common law and so would potentially satisfy that test for statutory rights. Right, but well, I guess, I mean, the issue to me is that there is a disaffirmation right, but typically that arises in the context of a plaintiff who actually, a minor who entered a contract and he or she did not. Right. And so that raises the question of what, where is the actual kind of traditional legal injury? We would usually allow somebody to sue on behalf of somebody else's contract. I absolutely agree. Again, I think this gets to the distinction between the pleading and the facts that are outside of the pleadings. She did not plead that this was her dad's contract. Of course she didn't. She, she pleaded that she had these various agreements with Blizzard. I think along the lines of Judge Beatty's question that it may have been these individual transactions. And she pleaded that that is what she wanted to disaffirm. If she had pleaded what the facts actually are, which is that it was her father's contract, then I agree with you. There would have been no injury from the outset and no basis to proceed. But there's no terms of service. Isn't that where, when I read their complaint, I thought they were suggesting that this violation of the right to disaffirm was because Blizzard had said, had said, so you can't get a refund in the terms of service in the EULA, but there are no terms of service and with respect to these individual transactions and assuming that those are the contracts that issue. So I, it seems like we're chasing our tail here. How does that become a statutory injury that she was not, she did not have any contract that said she couldn't get a refund. I, I agree with the court. If that is the reading of the complaint that she has not alleged a violation of any right that she has. And as a matter of fact, she, she has no rights here because this is a contract between her father and Blizzard that she cannot disaffirm under California law. And so I will not disagree with the court that if that is her theory, then there is not enough to support it. And there's no violation of the statute. That said, the reason we had not challenged it was because we, we had read her as her complaint as claiming some concrete violation of her disaffirmation rights. But you did raise it in your reply brief. That's where this all started. There was no motion in the district court. In fact, the motion in the district court was based on mootness. And then here on the, the premise of appeal with respect to the denial of arbitration in a reply brief, Blizzard raises for the first time that she may not have standing because she doesn't have an injury. So it's perplexing to me that since Blizzard is arguing both things, that she does have standing, she doesn't have standing. I don't know what your position is. So I think our position is if we were to put the facts before the district court in a motion for summary judgment, which is the way, for instance, this typically comes up when there are facts at issue, that our position would be that she does not have standing. The court has not made factual findings along those lines. In Lujan itself, for instance, right? Lujan came up on a motion for summary judgment that effectively disposed of the standing question. We have not brought such a motion. And so while we flagged these facts in our reply brief as something that I think casts doubt on whether or not she has standing here, that is not something that is, I will confess, that has not been developed in the district court. And so there aren't factual findings to support it right now. So would that suggest that we should remand this to the district court to develop a record on whether she has standing? So that's a difficult question for me to answer given the posture of this case. And I ultimately think the right answer is that on the record before the court now, I think she has adequately pleaded that she has standing. And of course, I'll have to let plaintiff's counsel really support that proposition, but we had not challenged it based on our reading that she had adequately pleaded it. We have, there are not factual findings in the district court that would defeat it at this point. And in the meantime, we moved to push this to the correct forum, which is arbitration. And so I don't think it is apparent on the current factual record that she does not have standing. And so I think the court was required to grant a motion. I guess I'm curious, what more facts do you think we would need? I mean, we have the legal, the law on disaffirmance. We have a contract. It's not entered by her, right? What more do you think is out there that needs to be discovered? I don't think there is anything, Your Honor. If the court has no further questions, I will reserve the balance of my time. Thank you. Good morning, Your Honors. And may it please the court, Eugene Turin here on behalf of Plaintiff Appellee, and I'd like to first start by addressing the court's questions regarding article three standing. And we would agree with counsel for defendant appellant that there's clearly an article three injury here. One, as the court in ID versus Facebook found there's an actual controversy over minors' right to disaffirmation purchases in addition to her claims under the UCL, but I would encourage this court to look a little bit further. And the facts in the complaint state that it was the plaintiff who made the account to make purchases. She made the purchases without her father's permission. So she is the actual purchaser of these card packs. I would point this court to a very different but similar line of cases involving civil forfeiture, where a party challenging civil forfeiture has to allege sufficiently that they have standing in the property that is being seized. And so, for example, the First Circuit in United States versus Union Bank for Savings and Investment, 487 F.3D8, it noted that even though the party challenging the forfeiture was not the quote unquote statutory owner of the funds, it quote unquote exercised full dominion and control over the bank account such that there was article three standing. And so we believe that in addition to the standing that's created by her actually challenging disaffirmance and her actually claiming that there was deceptive conduct by defendant that triggered her claims under the UCL, that there's an actual injury and controversy here because she has an interest in these card packs that she believes were worth less than they would be and in the funds that were used to purchase these card packs in the way that she was the actual purchaser of them. But aren't the funds her father's? They are her father's funds, but she was using them and she was controlling. I would analogize this to any other situation. If someone walks into Best Buy and purchases a TV, I don't think anyone would say that their wife was the purchaser of the TV just because it was her credit card. So what contract is she disaffirming? The contract for the purchases, Your Honor. So these individual transactions, these are the contracted issue? Well, it's two parts, Your Honor. In terms of the complaint and the pleadings, yes, it's the individual purchases. For the purposes of the defendant's motion to compel her declaration, as the California district courts are clear and the California appellate courts are clear, that disaffirmance, it can't be limited to just the purchases. It's a total disaffirmance that necessarily has to include any other contracts. So her father's contract. So you're saying she has a right to disaffirm her father's contract with her father? I would actually say that. So our argument is based on rebuttal that in response to the defendant's argument that there's even supposedly a contract that binds her by her father. Now, if we take a step back from that, I would actually like to point out that defendant never actually argued in its opening brief that plaintiff was bound to the EULA because the father agreed to it on her behalf. In fact, what they argued was that the father cannot disaffirm the contract based on the plaintiff's disaffirmance. And in fact, the opening brief stated that, quote unquote, this case does not require the court to wrestle with implications of plaintiff's argument that section 6710 allows minors to disaffirm. That's the opening brief at 20. So defendants have not actually properly raised the argument that plaintiff was bound to the EULA because the father agreed to it on her behalf. And the California Appellate Court in Berg versus Traylor is in agreement with that. And that's where our argument on disaffirmance comes in, because the California Appellate Court in Berg versus Traylor was clear that a plaintiff can disaffirm a contract that was entered into on her behalf. How do you deal with, you know, there's lots of California cases, right? I'm looking at one of them. A minor statutory power to disaffirm a contract does not apply to contracts between adults and is therefore not controlling on the question of a parent's power to bind his child to arbitrate by entering into a contract in which the child is a third party beneficiary. Why wouldn't that be this case? Your Honor, may I ask you from, are you reading the Hokey versus San Diego case? I'm looking at Berg. Well, so Berg pointed out there are specific instances where there are policy considerations that bar disaffirmance. One of those, for example, is the one that raised in Hokey, which involves a release of liability. Others are specific policy concerns. For example, a parent's provision of medical services for their child. And so the California Appellate Courts do agree that there are particular circumstances where a child, a minor, did not disaffirm a contract entered into on their behalf by a parent. But those are discrete instances that are covered by discrete cases. Can I ask, can we go back to the standing question for a moment? Yes, Your Honor. So I heard you, I think, had kind of two positions on this. One was there was a sort of injury to her statutory right to disaffirm, right? The other was essentially that she perhaps had an interest in the funds that were paid because she's a member of the family. Is that fair? I think we would argue that it's not just an interest in the funds because she was a member of the family, but because she actually exercised control over those funds. And we would also argue that there's an interest in the actual underlying property itself, because plaintiff does allege that the card packs were worthless. And so she's seeking to have those card packs to disaffirm them and have them return. And so we would argue that there's two individual basis for that injury. Do both of those fall back on where the Supreme Court is taking us in TransUnion to ask are these traditional kinds of injuries that you can vindicate in court? Your Honor, I think we would argue that TransUnion is different because that was looking at a very specific statutory violation. And it was an issue of is there a sufficient connection to a traditional injury? We would argue here there's no question that there's a connection to a traditional injury. Someone made a purchase of something that they want to return because they don't think it's worth what they paid for it. I mean, it's traditional deceptive conduct. But there's something kind of artificial about this case, right? Which is that the father obviously was injured by the allegations of the complaint. He was injured. He could have been suing. You obviously have some reasons for not wanting to have him as the named plaintiff. But that's what's creating so many of the complexities in the case. Well, Your Honor, we would argue that it would be odd for the father to be suing when he wasn't the one using the account. He wasn't the one pressing the purchase button. He wasn't the one being deceived by the presentations. But he's the one who lost money. That's his dollars and cents. I mean, he signed an arbitration agreement that has a class arbitration waiver. So I can understand why there may be some strategic reasons why it would be better if the daughter could come in and disaffirm all that. But that's what's, I think, creating the tension in this case. Your Honor, that may be the case. But I don't think that the father, for example, could plead a UCL claim. Because he wasn't the one subject to deceptive conduct. So, setting that aside for a moment, I think the fundamental question for me is the nature of the contract. Which contracts are at issue? And it's still about clear as mud at this point. So, your complaint is very equivocal. Any contract that may exist, there may have been a contract. When I ask you, what contract was she disaffirming? Where was her right to disaffirmance violated? I don't think you answered my question. You started talking about the EULA and the father's contract with Blizzard. But the only contract she has, assuming that she's not bound by her father entering a contract that says it binds minors in my household who I allow to use this account. So, the only other contracts potentially at play are these individual transactions. Which have no provision that she can't get a refund. I don't know how the terms of service come into play and how that becomes a violation of her statutory rights of disaffirmance. Well, your Honor, and I apologize for not answering your questions directly. Plaintiffs would argue that the contracts that she's looking to disaffirm are the purchase contracts. Okay, so each transaction. Each transaction. There's no documentation that I'm aware of. What is the extent of these contracts? They make an, Blizzard make an offer to sell the card packs. She accepted by purchasing them. And I'm also interested in how her disaffirmance rights were violated with respect to those contracts. And your Honor, just one moment. Because we do plead in our complaint that, so the, there it is. It's on Expert of Record 120, page four of the complaint. And it is the footnote eight. Defendant has a separate page on its website titled Refund Policy. And that page, as of, I think four days ago, last time I checked, specifically said that there are no refunds for Hearthstone purchases. And so that page exists separate and apart from the EULA. And so you, so the plaintiff, the YH would have agreed to those terms or been violated by those terms? How? I mean, aren't they part of the user agreement? Well, so the disaffirmance claim is not that she was violated by those terms. It's that she seeks a refund of her purchases. Her UCL claims are that, in part, that there's deception going on because there's no refund being provided for. But also, in a large part, the deceptive nature of defendant's game and how those card packs were sold to her. I would also like to address some of the arbitration questions, unless Your Honor has further questions. Well, I think what I, what you're saying is that you believe YHS standing and you want this matter to stay in federal court despite contesting the removal and wanting to be remanded to state court. So is the plaintiff's position that this is appropriately here in federal court? We do believe that, Your Honor. Now, the reason we sought remand was because of defendant's completely contradictory position on its offer to moot. And very briefly addressing that, it's very clear under Gomez v. Campbell, Ewald, Chen v. Allstate that an offer of relief to an individual plaintiff does not moot their claims when there's a class action brought. I know defendant argues that somehow disaffirmance is different, such that it can be immediately accepted. I don't think there's any support for that. There's nothing different between a demand for disaffirmance versus a demand for damages under the Telephone Consumer Protection Act. So ruling in defendant's favor on that would necessarily require over-reversal of those two. Our motion for remand was based on that motion that somehow plaintiff's claims were moot. And so we argued that it's completely contradictory for defendant on the one case to argue that there's mootness, but on the other case to try to remove the case the next day after supposedly accepting the disaffirmance. I want to briefly address the issue of arbitration. And as we noted in our brief, disaffirmance goes to the very making of a contract. California Appellate Court is clear that when a minor disaffirms a contract, it's ab initio. It renders the contract a nullity from its very inception. And we would argue that under Renner Center, AT&T, and Buckeye, disaffirmance under 6710 goes to the very making of a contract. But it seems that disaffirmance makes the contract voidable, but not necessarily void, because the minor has an option and there's a certain timeframe in which this has to occur. So if the minor chooses not to disaffirm, the contract may have been voidable, but it's not void. So you're saying if they do disaffirm, then that means it's void. Well, we would point... So in Buckeye, the court does talk about a Florida state statute that renders a contract void if there are certain provisions in it. What we would point to is the Sixth Circuit dissent in In Re Stock X data breach litigation that points out that this affirmation is different in nature because it necessarily, you can't aim it specifically at a delegation clause or specifically on an arbitration clause. It has to go to the contract as a whole. And in that dissent, they cited to the Tenth Circuit decision in Spahr v. Seko, 330 F.3D 1266, where the court dealt with a mental incapacity challenge. And the Tenth Circuit found that a mental incapacity challenge cannot be divided between an arbitration agreement versus the contract as a whole, such that prima paine does not really apply in such circumstances. And in fact, it's telling the Supreme Court in Buckeye cited Spahr v. Seko as an example of a case where there was a challenge to the making of a contract such that it should in fact be before the court and not an arbitrator. And turning back to your judge's point, we would argue that this affirmance is based on the same concepts. The appellate court in Traylor said that it protects minors from quote unquote lack of judgment and experience, which is the same concerns underlying a mental incapacity defense. And so with this affirmance, it necessarily must go to the contract as a whole. And it's- So then is this just, are you arguing opposite KFC or you think that's a different case? Well, we think that both, we think that KFC just got it wrong. We think that this affirmance necessarily goes to the making of a contract. It goes to the same mental incapacity issues. Your Honor, I see I'm out of time. If I may have a second to address both questions. Your Honor, if I may first briefly turn to Judge's question about turning back. So the mental incapacity issue about whether this is void or avoidable. The mental capacity issue is that someone can be, someone can enter into a contract and then mental incapacity is only raised when that contract is sought to be enforced. So it's similar to here where this affirmance can be raised afterwards, just as mental incapacity can be raised even after a contract is formed and is presumed to be valid and enforceable. Thank you. Thank you. Your Honor, I'm not sure if I answered your question about KFC. Well, I think you said you would just tell us to disagree with it. So I think that does answer my question. All right. Thank you, Your Honor. For these reasons, we would ask that the court affirm the district court's ruling in its full. Thank you. Thank you, Your Honors. To just start with a procedural point, the order denying the motion to compel arbitration can't stand regardless of which path this court takes today. So if the court reaches the arbitration question, it should be reversed. If the court ultimately concludes that there's a standing problem, it should be vacated. And so there's no universe in our view in which that order, which was incorrect, should stand. On the arbitration question, I want to just walk through what I think plaintiff's theory is, as he just clarified it right now. Even if the theory is that the contracts at issue that he wants to disaffirm on the merits are the individual purchase contracts for card packs, that does not change the analysis for arbitration. The court still asks, was there an agreement to arbitrate? There was. It was Mr. Harris's agreement with Blizzard. The court then asks, is there a delegation provision? There is. If so, all questions about the validity of the overall contract and its enforceability, those all go to the arbitrator. And given that fact pattern, frankly, the court doesn't even need to reach the KFC and IC questions because it's not an arbitration agreement with a minor. It's an arbitration agreement with an adult that covers the minor under California law. And Berg, on which plaintiff relies, doesn't stand for anything different. Berg was a contract with a minor in part, and the court allowed the minor to disaffirm, but enforced it as to the parent. And actually in the provision that Judge Brest cited was distinguishing the cases we rely on, like Hohey and Aris, I think it's pronounced, where those contracts were enforceable as against a minor. On the standing... Can I ask a question about standing, getting back to standing? The opposing counsel cites civil forfeiture cases as a basis to say why H has standing when she is spending her father's money. Are you aware of any cases directly on point? I'm not, Your Honor. I certainly know, I will provide a qualifier, that under the California UCL, you definitely have to allege that it was your own property that was harmed. I don't think her allegations here would be sufficient under the California UCL, which is why, to me, the question is about whether she ultimately pleaded at some sort of statutory violation that is sufficient to confer standing. Because if the question is whether she has to have lost her own property, she clearly does not plead that. And again, it just... She had some, I think the argument was raised, she has some injury in not getting the cards that she wanted. That's correct. She certainly would allege some sort of injury about not getting what she wanted, but if it requires some sort of harm to her own monetary property, she did not plead that. Ultimately, on the standing question, we do think that the complaint adequately pleaded standing. It's a close question, but under the facts here, and given the clarification that the contracts at issue that she's wanting to disaffirm are, to her, these individual contracts, that would theoretically be a violation of her own right to disaffirm if she had one, but it does not change the answer with respect to whether they should go to arbitration. It absolutely should. And so we should... So how does that establish a violation of her right to disaffirm? Opposing counsel referenced a footnote in the complaint that talked about a refund policy on Belliger's website. Is that distinct from the EULA? Is that how she wasn't allowed to disaffirm? It is distinct from the EULA. I think the theory here, again, this all goes to paragraph 38, and in my mind, whether or not paragraph 38 is sufficient. If the court were to follow the... This was a rightness argument, but I think it could also be construed as a standing problem. If the court follows the Roblox case from the Northern District of California, that case required that a plaintiff actually allege that she essentially requested a refund and was denied, because that shows that there is an actual controversy about this particular person's ability to disaffirm a purchase contract and get a refund. The plaintiff here did not clearly allege that in the same way that Roblox would have required, but paragraph 38 seems to me to be potentially a general allegation that makes the same point, that if she had been permitted to disaffirm, she would have. If the court thinks paragraph 38 is sufficient to show that there is an actual injury to her statutory rights, then I think she pleaded Article III standing, and this court should reverse the arbitration order. If the court thinks that that isn't sufficient, then I think it's important that the court make clear that what a plaintiff needs to do is actually make a request for disaffirmance that is specifically denied. Part of the confusion of this case is that the plaintiff never, in fact, did that, which led to the whole mootness set of facts that I'm not going to get into, but essentially this plaintiff, as a matter of fact, never did request a refund, never did request any kind of disaffirmation, and I think that is sort of the first move on this chain of confusing moves that have led us here. Ultimately, again, I think the right answer is for this court to send the case to arbitration and to reverse the order of the district court. In the alternative, the court should vacate the order of the district court and find that there's no Article III standing. All right, thank you. Thank you. And this case is submitted, and we are adjourned for today.
judges: IKUTA, BADE, BRESS